UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMIYLA CODY,

                              Plaintiff,

                    v.

CHARTER COMMUNICATIONS, LLC,

                              Defendant.

MARIANNE T. O'TOOLE,

                              Trustee.

No. 17-CV-7118 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Michael Bruce Ranis, Esq.
Michael Ranis, Attorney at Law
Goshen, NY
*Counsel for Plaintiff*

Joseph Scott Carr, Esq.
Nathan D. Chapman, Esq.
Michael David Kabat, Esq.
Shawna Marie Miller, Esq.
Kabat Chapman & Ozmer LLP
Atlanta, GA
*Counsels for Defendant*

Holly Ruth Holecek, Esq.
Lamonica Herbst & Manisclco, LLP
Wantagh, NY
*Counsel for Trustee*

KENNETH M. KARAS, United States District Judge:

        Jamiyla Cody ("Plaintiff") brings this Action asserting claims against Charter

Communications, LLC ("Defendant"), under Title VII of the Civil Rights Act of 1964, Title I of

the Civil Rights Act of 1991, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, alleging that Defendant discriminated against Plaintiff on the basis of race when it constructively discharged her, created a hostile work environment pervaded with derogatory and racist comments, and failed to take disciplinary measures against Plaintiff's co-workers for engaging in race-based harassment.  (*See* Am. Compl. (Dkt. No. 5).)

Three Motions, largely unrelated to the underlying allegations in the Amended Complaint, are currently before the Court.  First, Defendant has moved for Judgment on the Pleadings, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (c) and on the basis of judicial estoppel.  (*See* Not. of Mot. for Judgment on the Pleadings (Dkt. No. 60.)  Second, the trustee for Plaintiff's Chapter 7 Bankruptcy proceedings, Marianne O'Toole ("Trustee"), has moved to substitute herself in this Action as the plaintiff, pursuant to Federal Rules 17(a) and 25(c).  (*See* Not. of Mot. To Substitute (Dkt. No. 83).)  Third, Defendant has submitted a Motion for Sanctions against Plaintiff and her counsel, seeking both dismissal of this Action and payment of Defendant's costs and fees, pursuant to 28 U.S.C. § 1927.  (*See* Not. of Mot. for Sanctions (Dkt. No. 87).)  For the reasons stated herein, the Motion for Judgment on the Pleadings is partially granted and partially denied, the Motion To Substitute Trustee in for Plaintiff is granted, and the Motion for Sanctions is denied to the extent that Defendant seeks dismissal of this Action or monetary compensation from Plaintiff's counsel.

I.  Background

A.  Factual History

The following facts are drawn from the Amended Complaint and other pertinent documents that the Court may consider in resolving these Motions.[1]

1.  The Underlying Complaint

Plaintiff is an African-American woman who began working for Defendant in December 2014 as a customer service representative.  (Am. Compl. ¶ 14.)  Plaintiff allegedly began experiencing a hostile work environment on the basis of her race in May 2016, when she switched to a new team that was supervised by Kim Albrecht ("Albrecht").  (*See id.* ¶ 15.)

Plaintiff allegedly heard co-workers make multiple demeaning comments that she interpreted as racially motivated.  For example, a co-worker, Allan Seebach ("Seebach"), once told Plaintiff that her four-year-old nephew, who complained whenever Plaintiff left home to work, was learning how to stay at home and "live off the [welfare] system."  (*Id.* ¶ 15 (alteration in original).)  Another co-worker, Bryan O'Neil ("O'Neil"), repeatedly commented about how another black co-worker, Thomas J. Farmer ("Farmer"), did not have a present father, and, on Farmer's birthday, offered to get him what Farmer's dad had given him—"nothing."  (*Id.* ¶ 16.)

Beginning in early September 2016, Plaintiff's co-workers began telling her that they could not pronounce neither her name, nor what Plaintiff considered an acceptable nickname, i.e., "Jam Jam."  (*Id.* ¶ 18.)  Instead, her co-workers repeatedly called her "Jar Jar" and sent her images of the Star Wars character Jar Jar Binks, despite her requests for them to stop.  (*Id.* ¶¶ 18–19.)  Plaintiff also observed comments that were "hostile" to black people in an online

---

[1] Because multiple reviewing standards are relevant to the resolution of all the issues presented, where necessary, the Court will explain which documents may be considered and why.

chat room in which many co-workers participated, including the use of racial slurs, lynching references, and generally violent language in response to Farmer's decision to apply for a promotion.  (*Id*. ¶¶ 20–27.)

In October 2016, while driving home from work late at night, Plaintiff observed Seebach, also in his car, pulling up next to her at a traffic light.  (*Id*. ¶ 28.)  Plaintiff told Seebach to get home safe, and Seebach responded that he was "driving while white," so he would not have any problem getting home safe, but that Plaintiff, who was "driving while black," was the one who "should be careful."  (*Id*.)  Seebach also told Plaintiff that she could not tell Human Resources about this incident because it occurred outside of work.  (*Id*.)  Plaintiff alleges that she had submitted complaints to Albrecht about this and other incidents, but Albrecht replied only that she had not known about the comments (which Plaintiff posits is impossible), that she was sometimes "slow" in reacting to these kinds of incidents, and that she would have corrected the situation had she understood what was happening.  (*Id*. ¶ 30.)

In November 2016, Plaintiff spoke to Employee Relations about some of the racial comments she had overheard, and the manager, Stephen Akerele ("Akerele"), said that he would investigate her allegations.  (*Id*. ¶ 32.)  However, Akerele refused to tell Plaintiff what specific actions, if any, were taken in response to her allegations.  (*Id*. ¶¶ 33–35.)  On December 9, 2016, Plaintiff informed Defendant that she would be resigning her employment with Defendant, effective December 23.  (*Id*. ¶ 37.)  Following that notice, another manager, Mary Digilio ("Digilio"), apologized that Plaintiff had to go through a difficult experience and told Plaintiff that her allegations were being investigated, but once again said that the manner of resolution was "confidential."  (*Id*.)  Digilio told Plaintiff that they would be changing her team assignment in response to her complaints.  (*Id*.)  Plaintiff claims that this was constructive discharge.  (*Id*.

4

¶ 38.)  Plaintiff emailed Digilio about a week later and confirmed that she would indeed be ending her employment with Defendant because she was "uncomfortable with the events that have occurred."  (*Id.*)

### 2.  Plaintiff's Subsequent Bankruptcy Proceeding

On August 27, 2019, Defendant wrote a letter asking for leave to file a motion seeking dismissal of the Action based on Plaintiff's actions in a separate Bankruptcy proceeding (the "Bankruptcy Action").  (Letter from Nathan D. Chapman, Esq. ("Aug. 2019 Chapman Ltr.") (Dkt. No. 53).)  In that letter, counsel for Defendant informed the Court that Plaintiff filed her Bankruptcy Action in May 2019.  (*Id.* at 1.)  In her initial petition for relief (the "Bankruptcy Petition"), Plaintiff swore under penalty of perjury that she had no lawsuits against third parties, no claims against third parties, and that no third parties owed her any money.  (*Id.*; *see also* Aff. of Nathan D. Chapman, Esq. in Supp. of Mot. for Judgment on the Pleadings ("Chapman Aff. in Supp. of Mot. for Judgment on the Pleadings") Ex. 4 ("Pl.'s Bankr. Pet.") 13–14 (Dkt. No. 62-4).)[2]  Defendant argued that these statements were false, given that the instant Action was pending at the time that Plaintiff filed her Bankruptcy Petition.  (*See* Aug. 2019 Chapman Ltr. 1.)  Based on these representations, on August 19, 2019, the bankruptcy court adopted the Trustee's

---

[2] The Court is permitted to take judicial notice of Plaintiff's filings in the Bankruptcy Action in resolving the Motion for Judgment on the Pleadings.  "On a [Federal Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice . . . .'"  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and quotation marks omitted).  Specifically, "courts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court." (citation omitted)); *Missere v. Gross*, 826 F. Supp. 2d 542, 552 n.5 (S.D.N.Y. 2011) (explaining that a motion for judgment on the pleadings is "governed by the identical standard of review" as a motion to dismiss (citation and quotation marks omitted)).

recommendation that there was "no property available for distribution," discharged Plaintiff's

debts without payment to creditors, and closed the case.  (*Id.* at 2; *see also* Chapman Aff. in

Supp. of Mot. for Judgment on the Pleadings Ex. 5 ("Bankr. Action Discharge") (Dkt. No. 62-

5).)

  In response to Defendant's August 2019 Letter, Plaintiff's counsel wrote a Letter

conceding that Plaintiff's Bankruptcy Petition was "incorrect" in that it failed to disclose the

existence of the instant Action.  (*See* Letter from Michael Ranis, Esq. ("Aug. 2019 Ranis Ltr.")

(Dkt. No. 54).)  Plaintiff's counsel further acknowledged that "substantial authority supports

[D]efendant's position that a plaintiff may be estopped from continuing her case where there is a

false or incorrect statement in her voluntary Bankruptcy Petition."  (*Id.* at 1.)  However,

Plaintiff's counsel also posited that some discretionary factors, including the existence of a

"good faith" mistake, might cause the Court to refrain from dismissing the entire Action.  (*See*

*id.* at 1–2.)  Plaintiff's counsel requested time to contact Plaintiff and/or her bankruptcy counsel

and provide a fuller record before the Court acted on Defendant's demand for dismissal.  (*See id.*

at 2.)

### 3.  Trustee's Appearance and Defendant's Request for Sanctions

  Once briefing on the Motion for Judgment on the Pleadings had been submitted,

Defendant also submitted a request for leave to file a motion for sanctions against Plaintiff and

her counsel, claiming that Plaintiff made representations in her Opposition to the Motion for

Judgment on the Pleadings that were contrary to her sworn deposition testimony.  (Letter from

Nathan D. Chapman, Esq. ("Jan. 2020 Chapman Ltr.") 2 (Dkt. No. 75).)  Specifically, Defendant

pointed out that, although Plaintiff submitted an Affidavit stating that she did not review her

Bankruptcy Petition for accuracy in detail before signing, she had earlier testified in her

deposition that she did review all records carefully with her bankruptcy attorney before filing the Bankruptcy Petition.  (*See id*. at 2.)  Defendant argues that this means that Plaintiff has either lied in her deposition or in her Affidavit, and that this conduct "is indisputable bad faith" and grounds for sanctions against Plaintiff and/or her counsel.  (*See id*. at 2–3.)

On February 18, 2020, Trustee appeared in the instant Action, requesting leave to file a motion to substitute Trustee in for Plaintiff in this Action and to make arguments against dismissal of the Action.  (*See* Letter from Salvatore LaMonica, Esq. ("Feb. 2020 LaMonica Ltr.") (Dkt. No. 78).)  In that letter, Trustee's counsel wrote that, on February 11, 2020, the bankruptcy court had re-opened Plaintiff's Bankruptcy Action, in response to Plaintiff's motion asking for such relief.  (*See id*. at 1.)  Trustee argued that Plaintiff's claims in this Action are now the property of Plaintiff's "bankruptcy estate," and that Trustee should not be barred from pursuing this Action because it never had any knowledge of the falsity of Plaintiff's claims in her Bankruptcy Petition.  (*See id*. at 2.)

### 4.  Developments in the Bankruptcy Action

On November 4, 2019, Plaintiff filed a motion to re-open the Bankruptcy Action, in which she informed the bankruptcy court only that "[t]here was an asset not listed on the debtor[']s schedules at the time of filing," that she sought to "re-open her case and amend her schedules to include an asset," and that there would be "no adverse effect on the creditors" by re-opening the case.  (*See* Chapman Aff. in Supp. of Mot. for Judgment on the Pleadings Ex. 7 ("Pl.'s Mot. to Reopen Bankr. Action") (Dkt. No. 62-7).)  A hearing was held in front of The Honorable Cecelia G. Morris ("Judge Morris") on February 11, 2020 to discuss re-opening the Bankruptcy Action.  (*See* Decl. of Nathan D. Chapman, Esq. in Supp. of Mot. for Sanctions ("Chapman Decl. in Supp. of Mot. for Sanctions") Ex. 8 ("Bankr. Action Hr'g Tr.") (Dkt. No.

89-1).)  At that hearing, Plaintiff's bankruptcy counsel told the court that the missing asset was a "discrimination suit" that was originally undisclosed in the Bankruptcy Petition.  (*See id*. at 2.) Although counsel for Defendant attempted to oppose re-opening the Bankruptcy Action, Judge Morris re-opened it, (*see id*. at 6), noting that doing so was "for the benefit of the creditors," and that Defendant was not a creditor, (*id*. at 3).  Since then, Plaintiff has not filed any amended bankruptcy petition listing this Action as an asset.  (*See generally* Dkt. (Bankr. S.D.N.Y., Case No. 19-35764-cgm) (last accessed July 6, 2020), *also available at* Chapman Decl. in Supp. of Mot. for Sanctions Ex. 9 ("Apr. 3, 2020 Bankr. Action Dkt. Report") (Dkt. No. 89-2).)

Based on the foregoing record, the Court must resolve the following disputes: Defendant seeks dismissal of this Action and sanctions against Plaintiff's counsel based on Plaintiff's purported misrepresentations in this and the Bankruptcy Action; both Plaintiff and Trustee oppose dismissal of this Action and sanctions against Plaintiff and her counsel; and Trustee seeks to be substituted in for Plaintiff for the remainder of this Action, should it be permitted to continue.

B.  Procedural History

On September 19, 2017, Plaintiff filed the original Complaint against Defendant.  (*See* Compl. (Dkt. No. 1).)  Plaintiff filed the Amended Complaint on October 25, 2017.  (*See* Am. Compl.)  Defendant Answered on January 2, 2018.  (*See* Answer (Dkt. No. 9).)  On May 24, 2018, following a Pre-Motion Conference, the Court adopted a briefing schedule for Plaintiff's putative motion to amend, in which Plaintiff's counsel sought to add two additional plaintiffs to the Action.  (*See* Dkt. Nos. 22, 26.)  However, Plaintiff withdrew her Motion To Amend after filing her opening papers, informing the court that it would instead seek to engage in mediation with the Court-appointed mediator.  (*See* Dkt. No. 29.)  Defendant later wrote its own Letter

clarifying that the mediation involved *only* the claims of the additional plaintiffs that Plaintiff's counsel sought to add to the Action, and not Plaintiff's allegations.  (*See* Dkt. No. 31.)

Subsequently, on March 8, 2019, an Initial Conference was held regarding Plaintiff's claims, and a discovery schedule was adopted.  (*See* Dkt. Nos. 34, 36.)  The case was referred to The Honorable Paul E. Davison for pretrial purposes.  (*See* Dkt. No. 37.)  On August 30, 2019, defense counsel submitted a Pre-Motion Letter raising concerns about the Bankruptcy Action for the first time.  (*See* Aug. 2019 Chapman Ltr.)  A Pre-Motion Conference was held, and a schedule for Defendant's Motion for Judgment on the Pleadings was adopted.  (*See* Dkt. (minute entry for Oct. 21, 2019); Dkt. No. 59.)  Defendant filed its opening papers on November 15, 2019.  (*See* Not. of Mot. for Judgment on the Pleadings; Chapman Aff. in Supp. of Mot. for Judgment on the Pleadings; *see also* Def.'s Mem of Law in Supp. of Mot. for Judgment on the Pleadings ("Def.'s Mem. in Supp. of Mot. for Judgment on the Pleadings"); Mot. for Judicial Notice in Supp. of Mot. for Judgment on the Pleadings ("Mot. for Judicial Notice") (Dkt. Nos. 61, 63).)  Plaintiff filed an Opposition on January 4, 2020.  (*See* Pl.'s Mem. of Law in Opp'n to Mot. for Judgment on the Pleadings ("Pl.'s Opp'n to Mot. for Judgment on the Pleadings"); Pl.'s Aff. in Opp'n to Mot. for Judgment on the Pleadings (Dkt. Nos. 72–73).)  Defendant filed a Reply on January 20, 2020.  (*See* Def.'s Reply Mem. of Law in Supp. of Mot. for Judgment on the Pleadings ("Def.'s Reply in Supp. of Mot. for Judgment on the Pleadings") (Dkt. No. 74).)

Following the submission of additional Pre-Motion Letters, on March 3, 2020, the Court held another Pre-Motion Conference, where it addressed the Letters filed by counsels regarding Defendant's Motion for Sanctions against Plaintiff and/or her counsel and Trustee's Motion To Substitute Trustee in for Plaintiff.  (*See* Dkt. (minute entry for Mar. 3, 2020).)  Trustee filed opening papers on the Motion To Substitute on April 3, 2020.  (*See* Not. of Mot. To Substitute;

*see also* Aff'n of Salvatore LaMonica, Esq. in Supp. of Mot. To Substitute ("LaMonica Aff'n in

Supp. of Mot. To Substitute"); Trustee's Mem. of Law in Supp. of Mot. To Substitute

("Trustee's Mem. in Supp. of Mot. To Substitute") (Dkt. Nos. 84–85).)  On the same day,

Defendant filed opening papers for its Motion for Sanctions.  (*See* Not. of Mot. for Sanctions;

*see also* Chapman Decl. in Supp. of Mot. for Sanctions; Def.'s Mem. of Law in Supp. of Mot.

for Sanctions ("Def.'s Mem. in Supp. of Mot. for Sanctions") (Dkt. Nos. 88–89).)

On May 4, 2020, Defendant filed an Opposition to Trustee's Motion To Substitute.  (*See*

Def.'s Mem. of Law in Opp'n to Mot. To Substitute ("Def.'s Mem in Opp'n to Mot. To

Substitute") (Dkt. No. 90).)  Plaintiff and Trustee filed papers opposing the Motion for Sanctions

on the same day.  (*See* Trustee's Mem. of Law in Opp'n to Mot. for Sanctions ("Trustee's Mem.

in Opp'n to Mot. for Sanctions"); Aff'n of Salvatore LaMonica, Esq., in Opp'n to Mot. for

Sanctions ("LaMonica Aff'n in Opp'n to Mot. for Sanctions"); Pl.'s Mem. of Law in Opp'n to

Mot. for Sanctions ("Pl.'s Mem. in Opp'n to Mot. for Sanctions") (Dkt. Nos. 91–92, 94).)

Replies to both Motions were filed on May 18, 2020.  (*See* Trustee's Reply Mem. of Law in

Supp. of Mot. To Substitute ("Trustee's Reply in Supp. of Mot. To Substitute"); Def.'s Reply

Mem. to Pl. in Supp. of Mot. for Sanctions ("Def.'s Reply to Pl. in Supp. of Mot. for

Sanctions"); Def.'s Reply Mem. to Trustee in Supp. of Mot. for Sanctions ("Def.'s Reply to

Trustee in Supp. of Mot. for Sanctions") (Dkt. Nos. 95, 97–98).)

## II.  Discussion

### A.  Standards of Review

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has

authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233,

241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d

Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en

banc)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l*

*Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*,

561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)

(describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)

(quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998))).  "In adjudicating a

motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may

consider matters outside the pleadings."  *JTE Enters. v. Cuomo*, 2 F. Supp. 3d 333, 338

(E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### 2.  Rule 12(c)

To prevail on a motion under Federal Rule 12(c), a party must establish that no material

facts are in dispute and that judgment must be granted as a matter of law.  *See Sellers v. M.C.*

*Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Nieves v. Comm'r of Soc. Sec.*, No. 17-

CV-6844, 2019 WL 5722272, at *10 (S.D.N.Y. Aug. 9, 2019).  "In deciding a Rule 12(c)

motion, [the Court] employ[s] the same standard applicable to dismissals pursuant to Rule

12(b)(6)."  *L-7 Designs, Inc.*, 647 F.3d at 429 (citation, alterations, and quotation marks omitted).

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does

a complaint suffice if it tenders naked assertions devoid of further factual

enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550

U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing

any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79, ("Rule

8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a

prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions.").

      "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, in adjudicating a Rule 12(c) motion, a court may consider the
pleadings, their exhibits, statements or documents incorporated by reference in the pleadings,
"any matter of which [the court] can take judicial notice," and documents "integral" to the
complaint.  *120 Greenwich*, 2013 WL 12331487, at *4 (alterations and quotation marks omitted)
(collecting cases).

B.  Analysis

1.  Whether Plaintiff May Pursue This Action

Defendant argues that Plaintiff, by virtue of failing to disclose this Action as an asset in
her Bankruptcy Petition, no longer has standing to pursue these claims.  (*See* Def.'s Mem. in
Supp. of Mot. for Judgment on the Pleadings 13–14.)  Plaintiff has failed to address Defendant's
argument regarding standing.  (*See generally* Pl.'s Mem. in Opp'n to Mot. for Judgment on the
Pleadings.)  Generally, lack of responsiveness to an argument may itself be grounds for
dismissal.  *See N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F.
Supp. 3d 459, 469 (S.D.N.Y. 2014) ("It is well settled in the Second Circuit that . . . a plaintiff's
failure to respond to contentions raised in a motion to dismiss . . . constitute[s] an abandonment
of those claims. . . .  Plaintiff['s] failure to address the point provides an independent basis for
dismissal." (citations, alterations, and quotation marks omitted)).  However, the Court
nevertheless examines the law and independently seeks to determine whether Defendant's
argument is persuasive.

"[B]ankruptcy petitioners have an affirmative obligation to disclose all assets to the
bankruptcy court, including all causes of actions that can be brought by the debtor" because "the
bankruptcy system as a whole is grounded on the proposition that creditors have a right to know
what the debtor's assets are even though the potential may be contingent, dependent, or

conditional." *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 259 (S.D.N.Y. 2014) (citations, alteration, and quotation marks omitted).  When a debtor "fails to list a claim in his bankruptcy schedules, that claim remains the property of the bankruptcy estate even after discharge, and the debtor lacks standing to pursue it." *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 148 (E.D.N.Y. 2010) (citing 11 U.S.C. §§ 521(a)(1), 541)); *see also Rosenshein v. Kleban*, 918 F. Supp. 98, 103 (S.D.N.Y. 1996) (explaining that "[d]ebtors may not . . . pursue undisclosed claims for their own benefit" (citations omitted)).  This is a consequence of the Bankruptcy Code's intention to "severely penalize[]" debtors who fail to disclose "all their interests at the commencement of a case." *Ibok v. Siac-Sector, Inc.*, No. 05-CV-6584, 2011 WL 979307, at *2 (S.D.N.Y. Mar. 14, 2011) (citations, alteration, and quotation marks omitted) (hereinafter, "*Ibok II*"), *aff'd*, 470 F. App'x 27 (2d Cir. 2012) (hereinafter, "*Ibok III*").

Here, Plaintiff indisputably failed to disclose the existence of this Action in her Bankruptcy Action.  (*See* Pl.'s Bankr. Pet. 13–14; Bankr. Action Discharge.)  Nowhere in the law does the Court find a basis for consideration of defenses such as "good faith" or "mistake" when determining whether Plaintiff has standing to pursue this undisclosed Action.  In any event, Plaintiff did not offer any arguments rebutting Defendant's standing arguments.  (*See generally* Pl.'s Mem. in Opp'n to Mot. for Judgment on the Pleadings.)  Therefore, in accordance with other district courts within the Second Circuit, the Court concludes that "Plaintiff cannot be permitted to assert standing in the instant lawsuit now or in the future." *Ibok II*, 2011 WL 979307, at *2–3 (dismissing case where the plaintiff never made a written disclosure of the case in his bankruptcy proceeding because the case had become "an unscheduled claim that belong[ed] to the bankruptcy estate, not to [the p]laintiff"); *see also Faison v. Buckeye Pipe Line Servs. Co.*, No. 19-CV-7827, 2020 WL 2555229, at *3–5 (S.D.N.Y. May 20, 2020) (concluding

that the plaintiff lacked standing to pursue his civil employment action because, inter alia, he failed to disclose the civil action in his bankruptcy schedules); *Isnady v. Village of Walden*, No. 18-CV-2662, 2019 WL 3252753, at *5 (S.D.N.Y. July 19, 2019) ("[The p]laintiff failed to disclose his causes of action in the instant federal case during his bankruptcy proceeding and[,] therefore, lacks standing to bring the case at bar."), *aff'd*, 799 F. App'x 91 (2d Cir. 2020); *In re Corkran*, No. 13-30909, 2019 WL 965102, at *2 (Bankr. N.D.N.Y. Feb. 25, 2019) (explaining that, in the context of a "[C]hapter 7 [bankruptcy] case, only the trustee has standing to bring litigation claims, not the debtor," and that, even when the "[C]hapter 7 estate was closed, the [separate] employment claim did not devolve back to the [d]ebtor" because undisclosed assets remain "property of the estate until administered or abandoned by the trustee" (citations and quotation marks omitted)); *Mintz v. Transworld Sys., Inc.*, No. 14-CV-7044, 2016 WL 4367221, at *5 (E.D.N.Y. May 16, 2016) ("[B]ecause [the p]laintiff's claims belong to his bankruptcy estate and may only be brought by the Chapter 7 trustee, he lacks standing . . . ." (citation omitted)), *adopted by* 2016 WL 4275688 (E.D.N.Y. Aug. 12, 2016); *Leible v. Goodyear Tire & Rubber Co.*, No. 13-CV-47, 2015 WL 5542447, at *2 (W.D.N.Y. Sept. 18, 2015) ("As there is no dispute that [the] plaintiff received a discharge in bankruptcy without disclosing his personal injury claim on the schedules filed with the bankruptcy court, [the] plaintiff lacks standing to pursue this claim."); *Coffaro*, 721 F. Supp. 2d at 148 (explaining that because the defendant/debtor failed to list an interest in the painting at issue in the instant action in the defendant/debtor's separate bankruptcy action, it did not "have standing to assert an interest" in the painting); *Rosenshein*, 918 F. Supp. at 102–03 (explaining that certain entities lacked

standing to pursue undisclosed claims against the defendants because they failed to disclose them in their bankruptcy actions).[3]

### 2.  Substitution of Trustee for Plaintiff

Whether Trustee should be permitted to maintain this Action in Plaintiff's stead is a slightly more complicated question.  Defendant argues that Plaintiff's misrepresentations are so egregious that judicial estoppel should apply, and that dismissal of the entire Action is the only way to protect judicial integrity and deter future litigants from engaging in such behavior.  (*See* Def.'s Mem. in Supp. of Mot. for Judgment on the Pleadings 7–13; Def.'s Mem. in Opp'n to Mot. To Substitute 2–6; Def.'s Mem. in Supp. of Mot. for Sanctions 13–17.)  Trustee counters that judicial estoppel should not punish her interests in pursuing the Action because she has not engaged in any misconduct or misrepresentation.  (*See* Trustee's Mem. in Supp. of Mot. To Substitute 5–7.)  Moreover, according to Trustee, dismissal of the Action in its entirety would unnecessarily prejudice Plaintiff's creditors and create a windfall for Defendant, who "seeks an end run around . . . Trustee's administration of this asset of [Plaintiff's] bankruptcy estate." (Trustee's Mem. in Opp'n to Mot. for Sanctions 3.)  The Court considers these competing concerns below.

---

[3] The Court finds Defendant's standing arguments persuasive enough to conclude that *Plaintiff* may not prosecute or personally benefit from this Action, and therefore, the Court does not specifically address Defendant's judicial estoppel arguments in this context.  Defendant's judicial estoppel arguments in its Motion for Judgment on the Pleadings interplay heavily with Trustee's arguments that the Court should abstain from dismissing the Action in its entirety and, instead, permit Trustee to litigate it in Plaintiff's place, seeking any potential recovery for Plaintiff's creditors.  (*See generally* Def.'s Mem. in Supp. of Mot. for Judgment on the Pleadings; Trustee's Mem. in Supp. of Mot. To Substitute.)  Accordingly, the Court collapses the separate judicial estoppel arguments into one analytical question—should Trustee be permitted to litigate this Action in Plaintiff's place, or do concerns about judicial integrity merit dismissal of the Action entirely?  *See infra* Section II.B.2.

To begin, a bankruptcy trustee may be substituted in as the plaintiff to an action pursuant to Federal Rule 25(c), which states that, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "Substitution of a successor in interest under Rule 25(c) is generally within the sound discretion of the trial court." *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 269 F.R.D. 355, 358 (S.D.N.Y. 2010) (citation, alteration, and quotation marks omitted). Here, the instant Action was brought by Plaintiff in September 2017, and Plaintiff filed for bankruptcy in May 2019. (*See* Dkt.; Pl.'s Bankr. Pet.) Given that Trustee is attempting to prosecute this Action on behalf of Plaintiff's bankruptcy estate and creditors, substitution of Trustee as Plaintiff would be an appropriate transfer of interests that "[would] expedite and simplify the [A]ction," which is the "primary consideration" when determining whether to substitute a successor in interest. *Travelers Cas. & Sur. Co. v. Dormitory Auth. – State of N.Y.*, No. 07-CV-6915, 2011 WL 500068, at *2 (S.D.N.Y. Feb. 14, 2011) (citation and quotation marks omitted); *see also Taberna Cap. Mgmt., LLC v. Jaggi*, No. 08-CV-11355, 2010 WL 1424002, at *4 (S.D.N.Y. Apr. 9, 2010) (explaining that a bankruptcy trustee has "standing and statutory authority to assert . . . claims" because "any recovery . . . will flow exclusively to the bankruptcy trust for distribution in accordance with the bankruptcy plan"). The subsequent question is whether Defendant's arguments regarding judicial estoppel should require dismissal of the entire Action, thereby preventing Trustee from prosecuting it as property of Plaintiff's bankruptcy estate.

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding. A party invoking judicial estoppel must show that (1) another party advanced an

inconsistent position in another proceeding and (2) the first tribunal adopted that position in some manner." *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 155 n.7 (2d Cir. 2007) (citation and quotation marks omitted); *see also Envtl. Concern, Inc. v. Larchwood Constr. Corp.*, 476 N.Y.S.2d 175, 177 (App. Div. 1984) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." (citation and quotation marks omitted)). "Judicial estoppel is often applied 'to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013) (quoting *Ibok III*, 470 F. App'x at 28). There is, in general, a "'good faith' exception to judicial estoppel," i.e., courts hesitate to apply it when the misrepresentation was made through an honest mistake or unintentional error. *Whitehurst*, 998 F. Supp. 2d at 257 (citation omitted). However, "[t]he Second Circuit has not yet [instructed] whether good faith mistakes to include a specific asset in an earlier bankruptcy proceeding should invoke estoppel, though many circuits have concluded estoppel should apply" in such a circumstance. *Id*. at 259 (collecting cases). In response to this absence of instruction, "several district courts in this Circuit have ruled that failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has [(1)] no knowledge of the claims or [(2)] no motive to conceal the claims." *Azuike*, 962 F. Supp. 2d at 599 (citation and quotation marks omitted). However, "judicial estoppel is not a mechanical rule," and courts "must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of" applying the doctrine. *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266–67 (2d Cir. 2018) (citation omitted).

Here, assuming that Plaintiff's actions do not fall into any purported "good faith" exception to judicial estoppel, and after considering the facts and circumstances surrounding this Action and the Bankruptcy Action, the Court finds it imprudent to foreclose Trustee from prosecuting this Action on behalf of Plaintiff's creditors.  In reaching this determination, the Court does not intend to minimize the gravity of Plaintiff's failure to be transparent and forthcoming in her Bankruptcy Action.  Similar to other cases, Plaintiff "clearly had knowledge" of the existence of this Action, which preceded the Bankruptcy Action, and, regardless of whether malice can specifically be proven in this context, "had a *motive* to conceal" it because, "[h]ad[ T]rustee known about the claim, [she] might have attempted to sell the claim or to have extracted a settlement from[ D]efendant[] in this case for the benefit of [Plaintiff's] creditors." *Azuike*, 962 F. Supp. 2d at 600 (emphasis added) (citation, alterations, and quotation marks omitted) (discussing a plaintiff's failure to disclose an EEOC action in his bankruptcy petition); *see also Ibok v. Siac-Sector Inc.*, No. 05-CV-6584, 2011 WL 293757, at *8 (S.D.N.Y. Jan. 31, 2011) (same) (collecting cases) (hereinafter, "*Ibok I*"), *adopted by Ibok II*, *aff'd*, *Ibok III*.

Nevertheless, regardless of the level of culpability that may be attributed to Plaintiff, there is no discernible reason why *Plaintiff's* failure to disclose should foreclose *Trustee's* ability to prosecute this Action on behalf of Plaintiff's injured *creditors*.  In the face of similar arguments, the court in *Grammer v. Mercedes Benz of Manhattan*, No. 12-CV-6005, 2014 WL 1040991 (S.D.N.Y. Mar. 13, 2013), determined that judicial estoppel should not "bar a trustee . . . because the trustee ha[d] never abandoned the plaintiff's discrimination claim and the trustee never took an inconsistent position under oath with regard to such claims."  *Id*. at *6 (citation, alterations, and quotation marks omitted).  Indeed, applying judicial estoppel against Trustee

would be a particularly odd punishment given that Trustee herself was deceived by Plaintiff's

failure to disclose the existence of this Action.  (*See* Pl.'s Bankr. Pet.; Bankr. Action Discharge.)

> [R]efusing to permit the substitution of[ T]rustee as the real party in interest would
> represent a significant detriment to[]Trustee and, more importantly, to [Plaintiff's]
> creditors while at the same time permitting Defendant to receive a possible windfall
> by virtue of not being held accountable for its allegedly illegal actions.

*Grammer*, 2014 WL 1040991, at *6 (citation, alterations, and quotation marks omitted).

Defendant appears to argue that the purported egregiousness of Plaintiff's conduct

provides this Court with the discretion to dismiss the Action entirely.  (*See* Def.'s Mem. in

Opp'n to Mot. To Substitute 2–6.)  But Defendant's arguments fail to persuade the Court to use

any such discretion.  To begin, most of Defendant's cited cases are not binding on this Court.

(*See id.*)  Many of them are also materially distinguishable.  For example, in *In re Bilstat, Inc.*,

314 B.R. 603 (Bankr. S.D. Tex. 2004) a Chapter 11 trustee was precluded from pursuing a

potential *preference* action against an "unsecured nonpriority creditor" because the underlying

debtor had "failed to disclose and/or assert the preference claim in its schedules and statement of

financial affairs."  *Id*. at 606, 609.[4]  Those rulings occurred within the context of the bankruptcy

action itself and sought to protect a nonpriority creditor from losing portions of its recovery to

the debtor due to the debtor's failure to disclose the possibility of asserting a preference claim

---

[4] The Bankruptcy Law Manual provides an explanation of the purpose and nature of
preference actions:

> In order to achieve equality of distribution, the [Bankruptcy] Code gives a trustee
> the power to avoid and recover a preferential transfer made shortly before the
> commencement of the bankruptcy case that gives a creditor an unfair advantage
> over others.  This power is also intended to discourage creditors from racing to sue
> the debtor or seize assets on the eve of bankruptcy. . . .
>
> . . . [T]he estate representative may avoid and recover for the benefit of the estate
> any transfer of any interest of the debtor's property to or for the benefit of a creditor
> [pursuant to the elements of a preference claim set forth in 11 U.S.C. § 547].

THE HON. JOAN N. FEENEY, ET AL., 2 BANKR. LAW MANUAL § 9:10 (5th ed. 2020) (citations
and footnotes omitted).

against that creditor.  *See id.*  Defendant here is not a creditor in the underlying Bankruptcy

Action, and the circumstances of the instant Action are completely separate from the bankruptcy

itself.  In *In re Tanglewood Farms, Inc. of Elizabeth City*, Nos. 10-6719-8, 12-186-8, 2013 WL

1829910 (Bankr. E.D.N.C. May 1, 2013), again, the trustee was precluded from suing a former

*creditor* to recover certain transfers made in the course of the underlying bankruptcy action.  *See*

*id*. at *4–5.  And in *In re Fundamental Long Term Care, Inc.*, 542 B.R. 299 (Bankr. M.D. Fla.

2015), a trustee was precluded from pursuing claims "for the benefit of the judgment creditor"

against a third party who was alleged to have fraudulently failed to defend the debtor because,

inter alia, asserting "those claims would require the [t]rustee to prove the judgment never should

have been entered in the first place."  *See id*. at 301, 303.  None of these cited cases is analogous

to the circumstances presented here.

Defendant also emphasizes that Plaintiff may have engaged in intentional deceit and

"flagrant disregard for the judicial process" through, inter alia, lying in either her deposition or

her sworn affidavit and continuing to fail to amend her Bankruptcy Petition to include the instant

Action.  (*See* Def.'s Mem. in Opp'n to Mot. To Substitute 4–6.)  But even assuming that

Plaintiff's actions can fairly be interpreted as lying and/or intentionally manipulating the judicial

process, this argument also fails to address why *Trustee* and Plaintiff's *creditors*, who played no

role in the alleged deceit, should suffer the consequences, and why Defendant—who is not a

creditor in the Bankruptcy Action—should benefit.  Once again, Defendant's cited cases do not

provide further clarity on this point.  For example, in *In re Lowery*, 398 B.R. 512 (Bankr.

E.D.N.Y. 2008), the bankruptcy court declined to re-open a *bankruptcy* action that had been

closed for over eight years to include a then-undisclosed personal injury lawsuit.  *See id*. at 514–

15.  Based on the staleness of the bankruptcy action and the modest value of the personal injury

lawsuit, the bankruptcy court concluded there that, "[a]s a practical matter, no real benefit" existed to any creditors, who were unlikely to file proofs of claim. *Id*. at 516. These circumstances are not applicable here because Plaintiff's Bankruptcy Action was closed on August 19, 2019, and the Court cannot similarly conclude that Plaintiff's creditors would not be able to file proofs of claim on a newly added asset. (*See* Bankr. Action Discharge.) And in *In re Okan's Foods, Inc.*, 217 B.R. 739 (Bankr. E.D. Pa. 1998), the bankruptcy court refused to grant the *debtor* a judgment in *its* favor against a creditor because, inter alia, the debtor failed to list "a contingent or unliquidated [counter]claim, or right to setoff against [the creditor] stemming from [allegedly unconstitutional] conduct." *Id*. at 753; *see also id*. at 747, 756. In contrast, here, Defendant is not a creditor, and Trustee seeks recovery only on behalf of the creditors, not Plaintiff.

Therefore, the Court concludes that the most equitable way forward is to permit Trustee to prosecute this Action and seek recovery on behalf of Plaintiff's creditors. *See United States ex rel. O'Toole v. Cmty. Living Corp.*, No. 17-CV-4007, 2020 WL 2512099, at *7 (S.D.N.Y. May 14, 2020) (explaining that "judicial estoppel does not bar a trustee [from being] substituted into a case," even though the plaintiff-debtor may be foreclosed from pursuing it, especially where there is "no evidence . . . that [the trustee] herself took any inconsistent position" before any court "in regard to the instant claims" (citation, alterations, and quotation marks omitted)); *Montoya v. Daniel O'Connell's Sons, Inc.*, No. 15-CV-1580, 2017 WL 1167336, at *1–2, *5 (S.D.N.Y. Mar. 28, 2017) (explaining that, although the debtor-plaintiff may be precluded from pursuing a personal injury suit that was undisclosed in his bankruptcy petition, "substituting the [t]rustee as plaintiff in this action is . . . more equitable" than dismissing the case entirely); *Strauss v. Hibbits*, No. 15-CV-9, 2016 WL 7665786, at *2 (D. Vt. Apr. 18, 2016) (explaining

that "judicial estoppel does not warrant dismissal" of the debtor-plaintiff's undisclosed

malpractice claim because the "[t]rustee never abandoned the . . . claim, and never took an

inconsistent position with regard to that claim" and because doing so "would be a significant

detriment to [the debtor-plaintiff's] creditors" (citations omitted)).  Of course, "while estoppel

of[ ]Trustee, who did not conceal [Plaintiff's] alleged employment discrimination claims . . . is

not equitable, [Plaintiff her]self is estopped from seeking to recover, directly or indirectly, due to

[her] failure to schedule this case in [her Bankruptcy Petition]." *Grammer*, 2014 WL 1040991,

at *6.

### 3.  Motion for Sanctions

Defendant seeks sanctions against Plaintiff and/or her counsel under 28 U.S.C. § 1927.

(*See* Not. of Mot. for Sanctions.)  28 U.S.C. § 1927 states that:

> [a]ny attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred because of such
> conduct.

"[A]n award under § 1927 is proper only 'when there is a finding of conduct constituting or akin

to bad faith.'"  *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016)

(quoting *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d

Cir. 2004)).  "The attorney's actions must be 'so completely without merit as to require the

conclusion that they must have been undertaken for some improper purpose such as delay.'"  *Id.*

(quoting *State St. Bank*, 374 F.3d at 180).

Defendant contends that Plaintiff and her counsel have effectively lied under oath

because of her misrepresentations in her Bankruptcy Action, because her statements in her

deposition and in her Affidavit contradict each other, and because Plaintiff and her counsel

demonstrate a continued failure to correct the misrepresentations by failing to amend her Bankruptcy Petition and/or address the tension between her Affidavit and her deposition testimony.  (*See* Def.'s Mem. in Supp. of Mot. for Sanctions 9–16.)  Defendant seeks dismissal of this Action and payment of attorneys' fees in the first instance, but otherwise, wishes the Court to preclude Plaintiff from personally recovering from this Action.  (*See id.* at 16–17.)

Notably, the Second Circuit has clarified that Federal Rule of Civil Procedure 11 sanctions "may be imposed on both counsel and client, while § 1927 applies only to counsel. . . . Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1346 (2d Cir. 1991).  Other than referring to Federal Rule 11 in one footnote in its briefing, Defendant does not appear to actually move under this Rule or proffer any arguments pursuant to it.  (*See* Def.'s Mem. in Supp. of Mot. for Sanctions 12 n.4; Not. of Mot for Sanctions.)  Accordingly, the Court must look for "a clear demonstration of bad faith in order to justify sanctions," *Int'l Bhd. of Teamsters*, 948 F.2d at 1347 (citation omitted), and even if sanctions are required, they should be imposed to deter *counsel's* purported misconduct, not necessarily the client's, *see id.*

To begin, as discussed above, the Court sees no reason to dismiss this entire Action, even as a sanction for purported misconduct by Plaintiff's counsel.  Dismissal of the Action hurts Plaintiff's creditors more than anyone else.  It is true that in August 2019, Plaintiff testified at her deposition that she was under the impression that she would personally recover any damages obtained from this Action, (Chapman Aff. in Supp. of Mot. for Judgment on the Pleadings Ex. 1 ("Pl.'s Dep. Tr.") 303 (Dkt. No. 62-1)), that she reviewed all her bankruptcy paperwork with her

bankruptcy counsel and ensured that everything was true and accurate, (*see id*. at 26), and that she signed her Bankruptcy Petition after doing so, (*id*. at 317–18).  It is also true that, in the course of the instant Motion practice, Plaintiff, through her counsel, has submitted an Affidavit, dated January 4, 2020, stating that her bankruptcy counsel had advised her that she did not need to review a "bunch of" "minor" "legal stuff" in her Bankruptcy Petition, and that, as a result, she "inadvertently overlooked the question regarding 'pending law[]suits'."  (Pl.'s Aff. in Opp'n to Mot. for Judgment on the Pleadings ¶ 4.)  Plaintiff further affirms that, at her appearance in bankruptcy court in June 2019, she was informed by her bankruptcy counsel that she only needed to disclose the existence of this Action if she was "asked the question," which Plaintiff claims Trustee never did.  (*Id*. ¶¶ 5–7.)  Plaintiff claims that her omission of this Action from her Bankruptcy Petition was inadvertent and she simply relied on "inaccurate information" from her bankruptcy counsel because she did not "have a lot of experience in or understand the legal system," or, at least, not enough to realize that she should have voluntarily provided this information at her appearance in bankruptcy court.  (*Id*. ¶ 10.)

Obvious tension exists between Plaintiff's sworn testimony that she carefully reviewed every aspect of her Bankruptcy Petition for accuracy before filing it, (*see* Pl.'s Dep. Tr. 26, 317–18), and that Plaintiff simply cursorily reviewed her paperwork at the advice of her bankruptcy counsel, (*see* Pl.'s Aff. in Opp'n to Mot. for Judgment on the Pleadings ¶ 4).  But inconsistency does not necessarily prove that Plaintiff's counsel has submitted an Affidavit that he "kn[ows] to be false."  (Def.'s Mem. in Supp. of Mot. for Sanctions 12.)  Nor does it constitute an "action[]. . . so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose such as delay."  *In re Khan*, 488 B.R. 515, 529 (Bankr. E.D.N.Y. 2013) (citations and quotation marks omitted), *aff'd sub nom. Dahiya v. Kramer*, 2014

WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015). It is, of course, possible that Plaintiff gave the answer she thought she was obligated to give in a deposition and, following motion practice on the instant issues, it became necessary for Plaintiff and her counsel to reveal to the Court that Plaintiff actually did not review her bankruptcy materials as diligently as she should have. Although this may constitute a serious error that Plaintiff's counsel should avoid in the future, the Court is not convinced that Defendant has presented a "clear showing" that Plaintiff's counsel acted in bad faith or "completely without merit." *Id.* at 529 (citations and quotation marks omitted). Defendant's cited cases are largely inapplicable because they refer to different sanctioning mechanisms and standards and/or describe far more egregiously deceitful or dilatory behavior. *See, e.g.*, *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067–68 (2d Cir. 1979) (imposing sanctions under Federal Rule 37 where the plaintiff's counsel simply refused to engage in discovery requests and had "frozen [the] litigation in the discovery phase for nearly four years"); *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318, 2017 WL 3671036, at *2, *31–32 (S.D.N.Y. July 18, 2017) (concluding that *Rule 11* sanctions were warranted where counsel argued that his client did not have "sufficient contact with the United States or the State of New York" to come within the jurisdiction of the court but, inter alia, failed to reveal that the client's website listed a New York address as an "authorized dealer" and that his own attorney's fees were paid by check from a New York representative of his client), *adopted by* 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017); *Jimenez v. City of New York*, 166 F. Supp. 3d 426, 431 (S.D.N.Y. 2016) (upholding decision to sanction the plaintiff's counsel under Federal Rule 56(h) where counsel had "attempted to suppress[]various medical records," and had submitted an affidavit that was "more than just objectively unreasonable, [but also] absolutely

fanciful"), *aff'd in relevant part by* 666 F. App'x 39 (2d Cir. 2016).  Therefore, the Court sees no need to further sanction Plaintiff's counsel under § 1927 at this point in the litigation.

The Court warns Plaintiff that when she provides statements under penalty of perjury, whether through testimony, forms, affidavits, or any other judicial filing, she will be held liable for those words.  Even though laypeople may feel intimidated by legal proceedings, they must still diligently review the accuracy of all their judicial submissions.  But, to the extent Defendant seeks sanctions beyond barring Plaintiff from prosecuting and benefitting from this Action, the Court denies Defendant's Motion for Sanctions without prejudice.  Defendant may of course seek to file a motion for sanctions again if any misconduct continues.  However, given that Trustee is now prosecuting this Action and Plaintiff has been warned about the importance of being fully transparent and forthcoming in all her legal proceedings, the Court anticipates that this will not be the case.

### III.  Conclusion

For the foregoing reasons, the Court grants Trustee's Motion To Substitute herself for Plaintiff, and partially grants and partially denies Defendant's Motions for Judgment on the Pleadings and for Sanctions.  Plaintiff is precluded from personally prosecuting or profiting from this Action, but no further sanctions will be enforced at this time.  Trustee may proceed with prosecuting this Action on behalf of Plaintiff's creditors.

The Clerk of the Court is respectfully requested to modify the Docket so that Trustee is the operative plaintiff in this Action, and terminate the pending Motions.  (Dkt. Nos. 60, 63, 83, 87.)

SO ORDERED.

DATED:      July 6, 2020
              White Plains, New York

                                                          _____
                                                          KENNETH M. KARAS
                                                          UNITED STATES DISTRICT JUDGE